## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

ARROWHEAD PROPERTY, LLC,
CHASE COUNTY PROPERTY, LLC,
DOWNS PROPERTY, LLC,
EDWARDSVILLE PROPERTY, LLC,
SHR EL DORADO PROPERTY, LLC,
ESKRIDGE PROPERTY, LLC,
KAW RIVER PROPERTY, LLC,
LANSING PROPERTY, LLC,
NEODESHA PROPERTY, LLC,
PARKWAY PROPERTY, LLC,
PITTSBURG PROPERTY, LLC,
SPRING HILL PROPERTY, LLC,
WAKEFIELD PROPERTY, LLC,
WELLINGTON PROPERTY, LLC,
WICHITA PROPERTY, LLC, and
WILSON PROPERTY, LLC,

     Plaintiffs,

  v.

KSGA 16, LLC,
MICH 16 CHASE, LLC,
MICH DOWNS, LLC,
MICH 16 EDWARDSVILLE, LLC,
MICH 16 EL DORADO, LLC,
MICH 16 ESKRIDGE, LLC,
MICH 16 KAW, LLC,
MICH 16 LANSING, LLC,
MICH 16 NEODESHA, LLC,
MICH 16 PARKWAY, LLC,
MICH 16 PITTSBURG, LLC,
MICH 16 SPRING HILL, LLC,
MICH 16 WAKEFIELD, LLC,
MICH 16 WELLINGTON, LLC,
MICH 16 LINCOLN, LLC,

Civil Action No.

_____

1

MICH 16 WILSON, LLC, and
MICH 16 ARROWHEAD, LLC,

    Defendants.

## COMPLAINT FOR DAMAGES

    Plaintiffs, Arrowhead Property, LLC, Chase County Property, LLC, Downs Property, LLC, Edwardsville Property, LLC, SHR El Dorado Property, LLC, Eskridge Property, LLC, Kaw River Property, LLC, Lansing Property, LLC, Neodesha Property, LLC, Parkway Property, LLC, Pittsburg Property, LLC, Spring Hill Property, LLC, Wakefield Property, LLC, Wellington Property, LLC, Wichita Property, LLC and Wilson Property, LLC (collectively, the "Seller" or "Plaintiffs"), by its undersigned attorneys, bring this action against Defendants, KSGA 16, LLC, ("Original Purchaser") and Mich 16 Chase, LLC, Mich Downs, LLC, Mich 16 Edwardsville, LLC, Mich 16 El Dorado, LLC, Mich 16 Eskridge, LLC, Mich 16 Kaw, LLC, Mich 16 Lansing, LLC, Mich 16 Neodesha, LLC, Mich 16 Parkway, LLC, Mich 16 Pittsburg, LLC, Mich 16 Spring Hill, LLC, Mich 16 Wakefield, LLC, Mich 16 Wellington, LLC, Mich 16 Lincoln, LLC, Mich 16 Wilson, LLC, and Mich 16 Arrowhead, LLC, (the "Ultimate Purchaser," collectively with the Original Purchaser, the "Purchaser" or "Defendants"), for declaratory judgment and breach of contract expressly governed by Delaware state law, and, in support thereof, aver as follows:

## INTRODUCTION

1.     This case arises from Defendants' failure to honor express contractual agreements arising from the parties Purchase and Sale Agreement ("PSA") dated November 21, 2021 regarding sixteen (16) properties operating as skilled nursing facilities. In fact, Defendants now owe Plaintiffs more than $6,000,000.00 in earn out payments. Despite their clear obligation, Defendants refuse to pay, and, perhaps worse, tried to rush the sale of the properties so that they could avoid paying the earn-out at all. This is outrageous. As such, Plaintiffs come to this Court seeking declaratory judgment and breach of contract.

2.     A true and correct copy of the PSA is attached as Exhibit A.

3.     Defendants, the purchasers, consummated the purchase of the properties pursuant to the PSA on April 29, 2022.

4.     Upon consummation of the transactions contemplated by the PSA, Defendants leased the Plaintiffs' Assets (as hereinafter defined), including the properties, to Coronado Operator, LLC, as the master tenant (the "Master Tenant"). The Master Tenant then subleased each facility contemplated by the PSA to each of the subtenant entities. *See* Exhibit A § C; *see also* Master Lease Agreement ("MLA"), a true and correct copy of which is attached as Exhibit B.

5.      Pursuant to the PSA, in addition to the purchase price payable at the closing, the parties negotiated for Plaintiffs to be paid an earn out payment (the "Earn Out Payment") upon satisfaction of certain conditions related to the properties.

6.      On April 15, 2025, Defendants were (1) advised of the satisfaction of the conditions to payment of the Earn Out Payment and (2) provided with supporting documentation demonstrating that Plaintiffs triggered, and Defendants were obligated to pay, the Earn Out Payment in the amount of $6,000,000.

7.      Pursuant to the PSA, the Earn Out Payment is due on the earlier to occur of the sale of the properties or on the third anniversary of Defendants' purchase of the properties (i.e., April 29, 2025).

8.      Despite repeated communications to inform Defendants of their obligation to pay the Earn Out Payment, Defendants have failed to respond in writing and have orally stated to Plaintiffs that they will not pay the Earn Out Payment.

9.      In fact, despite their sophistication in commercial real estate transactions, Defendants never had any intention to pay the Earn Out Payment, as evidenced by their scheme to sell the properties in question to a third-party buyer, in an attempt to evade paying Plaintiffs, prior to April 29, 2025.

10.     As of the date of filing this Complaint, Defendants' actions—and inaction—represent that they do not intend to make the Earn Out Payment, as required under the PSA.

11.    This is a clear violation of the PSA between Plaintiffs and Defendants.

12.    As a result of Defendants' unlawful conduct, Plaintiffs have been deprived of their right to the Earn Out Payment despite achievement of an annualized EBITDAR preceding the Earn Out Date equal to or exceeding Eight Million Five Hundred Thousand Dollars ($8,500,000).

13.    Accordingly, Plaintiffs bring this action seeking both legal and declaratory relief to redress Defendants' misconduct and ensure that healthcare operations can continue uninterrupted at the facilities.

## THE PARTIES

14.    Plaintiffs, Arrowhead Property, LLC, Chase County Property, LLC, Downs Property, LLC, Edwardsville Property, LLC, SHR El Dorado Property, LLC, Eskridge Property, LLC, Kaw River Property, LLC, Lansing Property, LLC, Neodesha Property, LLC, Parkway Property, LLC, Pittsburg Property, LLC, Spring Hill Property, LLC, Wakefield Property, LLC, Wellington Property, LLC, Wichita Property, LLC, Wilson Property, LLC, are each organized and exist under the laws of the State of Florida. All members of each LLC reside in the State of Florida.

15.    The above-named Plaintiff entities are wholly owned by SHR Curis, LLC, which is organized and exists under the laws of the State of Florida. All members of SHR Curis, LLC reside in the State of Florida. SHR Curis, LLC is wholly owned by SCP & Co. Healthcare Realty, LLC, which is organized and exists

under the laws of the State of Florida. All members of SCP & Co. Healthcare Realty, LLC reside in the State of Florida. Bowline Capital Partners, LLC owns 88.57% of SCP & Co. Healthcare Realty, LLC. Bowline Capital Partners is organized and exists under the laws of the State of Florida, and all members reside in the State of Florida. Finally, the Crino Family Partnership, LLC and Feuer Family Partners II, LLC, each own 50% of Bowline Capital Partners, LLC's interest in SCP & Co. Healthcare Realty, LLC. The Crino Family Partnership, LLC and Feuer Family Partners II, LLC are both organized and exist under the laws of the State of Florida, and all of their members reside in the State of Florida.

16.    Defendant KSGA 16, LLC, is organized under the laws of the State of Delaware.

17.    KSGA 16, LLC designated the following entities to purchase each of the sixteen (16) properties deeded under the PSA: Mich 16 Chase, LLC, Mich Downs, LLC, Mich 16 Edwardsville, LLC, Mich 16 El Dorado, LLC, Mich 16 Eskridge, LLC, Mich 16 Kaw, LLC, Mich 16 Lansing, LLC, Mich 16 Neodesha, LLC, Mich 16 Parkway, LLC, Mich 16 Pittsburg, LLC, Mich 16 Spring Hill, LLC, Mich 16 Wakefield, LLC, Mich 16 Wellington, LLC, Mich 16 Lincoln, LLC, Mich 16 Wilson, LLC, each of which is organized under the laws of the State of Kansas, and all of their LLC members reside in the State of Kansas; and Mich 16, Arrowhead,

LLC, which is organized under the laws of the State of Georgia, and all of its members reside in the State of Georgia.

## JURISDICTION

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.00.

19.    This Court has personal jurisdiction over this action because Defendant KSGA 16, LLC is a Delaware LLC.

20.    Further, Section 13.15 of the PSA provides that the agreement shall be construed and enforced in accordance with the laws of the State of Delaware.

## FACTUAL BACKGROUND

21.    Plaintiffs are the owners of real property which they leased to one or more licensed healthcare operators to operate nursing homes, short term rehabilitation facilities and long-term care facilities across the United States.

22.    Defendants and Plaintiffs entered into a series of transactions under the PSA and the MLA, in which Defendants acquired Plaintiffs' assets, including real property, personal property and intangible property (the "Plaintiffs' Assets").

23.    Upon Defendants' acquisition of the properties from Plaintiffs on April 29, 2022 (the "Closing Date"), Defendants simultaneously leased the sixteen (16)

properties located in Kansas and Georgia to Coronado Operator LLC, as the Master Tenant, to continue operating the same as skilled nursing and senior care facilities.

24.    Upon closing, the Defendants paid the purchase price of Fifty-Two Million and No/100 Dollars ($52,000,000.00) (the "Purchase Price").

25.    In addition to the Purchase Price, and relevant to this dispute, section 2.3(b) of the PSA provided for the payment of an Earn Out Payment upon the occurrence of an "Earn Out Trigger Event." The Earn Out Trigger Event occurs upon the earliest of: (a) the sale of the Plaintiffs' Assets by Defendants, (b) a recapitalization or refinance of Plaintiffs' Assets by Defendants, or (c) the third anniversary of the Closing Date (the "Earn Out Date"). *See* Exhibit A, Article I.

26.    If the Earn Out Trigger Event occurs because no sale of the Plaintiffs' Assets, recapitalization of Plaintiffs' Assets and/or refinance of Plaintiffs' Assets occurs prior to the third anniversary of the Closing Date, then the Earn Out Payment amount depends on:

> the net income generated by the Master Tenant and all of the Operators attributable to the operations at the Facilities plus (a) interest expense with respect to all outstanding indebtedness of the Master Tenant and Operators, including capitalized interest, (b) taxes on income, whether paid, payable or accrued, (c) depreciation expense, (d) amortization expense, and (e) the amount of rent then being paid pursuant to the Master Lease agreement executed by Master Tenant as of the Closing Date, all of the foregoing determined in accordance with GAAP, minus gains from any sale of assets, other than sales in the ordinary course of business.

*See* Exhibit A, Article I. Hereinafter, the "EBITDAR."

27.    Section 2.3(b) further provides:

If the Earn Out Trigger Event occurs because no sale of the [Plaintiffs']
Assets, recapitalization of [Plaintiffs'] Assets and/or refinance of
[Plaintiffs'] Assets occurs prior to the third anniversary of the Closing
Date, then the [E]arn [O]ut [P]ayment shall either be: (1) Six Million
Dollars ($6,000,000) if the annualized EBITDAR for the nine (9)
month period preceding the Earn Out Date equals or exceeds Eight
Million Five Hundred Thousand Dollars ($8,500,000), or (2) Three
Million Dollars ($3,000,000) if the annualized EDITDAR for the nine
(9) month period preceding the Earn Out Date equals or exceeds Seven
Million Five Hundred Thousand Dollars ($7,500,000) but is less than
Eight Million Five Hundred Thousand Dollars ($8,500,000).

*See* Exhibit A § 2.3(b).

28.    On March 27, 2025, counsel for Plaintiffs contacted Defendants'
counsel, notifying Defendants' counsel that the final EBITDAR calculation would
result in the obligation of Defendants to pay the Earn Out Payment, providing
supporting documentation on a trailing eight (8) month basis for EBITDAR through
February 2025. *See* March 27, 2025 email from Plaintiffs' counsel, Matthew J.
Comisky, Esquire to Defendants' counsel, Israel Appel, Esquire, Boruch "Barry"
Drillman, principal of Purchaser entities and Eliyahu Konovitch Chief Financial
Officer of KSGA 16, LLC, a true and correct copy of which is attached as Exhibit
C.

29.    Plaintiffs' counsel further informed Defendants' counsel that it intended
to prepare and deliver a formal certificate on or about April 15, 2025, to support the
$6,000,000 payment, pursuant to Section 2.3(b)(ii) of the PSA.

30.     Defendants did not respond.

31.     As of April 15, 2025, Plaintiffs notified Defendants that the annualized EBITDAR for the properties for the nine (9) month period preceding the Earn Out Date exceeded Eight Million Five Hundred Thousand Dollars ($8,500,000), triggering Defendants' obligation to pay the $6,000,000 Earn Out Payment. *See* April 15, 2025 email from Plaintiffs' counsel, Matthew J. Comisky, Esquire to Defendants' counsel, Israel Appel, Esquire, a true and correct copy of which is attached as Exhibit D.

32.     On April 15, 2025, pursuant to the PSA, Plaintiffs delivered to Defendants a certificate with a calculation of EBITDAR to confirm the occurrence of an Earn Out Tigger Event, serving as a formal demand of Plaintiffs' Earn Out Payment equal to $6,000,000. Plaintiffs also included with such certificate a copy of Plaintiffs' "work papers and other materials establishing the calculations included in the certificate ("Work Papers")." Exhibit A § 2.3(b)(ii). *See* Authorized Representative Certificate and Work Papers, true and correct copies of which are attached as Exhibits E and F, respectively.

33.     Pursuant to Section 13.3 of the PSA, counsel for Plaintiffs also sent an overnight copy of the foregoing communication and supporting documentation to Eliyahu Konovitch, Chief Financial Officer of KSGA 16, LLC, Original Defendants, via overnight mail. *See* April 15, 2025 Letter from Plaintiffs' counsel, Matthew J.

Comisky, Esquire to Eliyahu Konovitch, a true and correct copy of which is attached as Exhibit G.

34.     Pursuant to the PSA, Defendants had ten (10) business days from the date of delivery of the Work Papers, or, if Work Papers are not requested, ten (10) business days from delivery of the certificate, to review and notify Plaintiffs of any disputes. The failure to notify Plaintiffs within the ten (10) business day time period shall be deemed to constitute Defendants' agreement with Plaintiffs' calculation of EBITDAR. *See* Exhibit A, § 2.3(b)(ii). *id.*

35.     Defendants never responded.

36.     Receiving no written response from Defendants, Plaintiffs' counsel followed up with Defendants' counsel on April 21, 2025. *See* April 21, 2025 email from Plaintiffs' counsel, Matthew J. Comisky, Esquire to Defendants' counsel, Israel Appel, Esquire, a true and correct copy of which is attached as Exhibit H.

37.     Again, Defendants never responded.

38.     Defendants failed to request any supplemental Work Papers within five (5) business days from the delivery of the certificate, or by April 22, 2025.

39.     Defendants' repeated decisions to ignore Plaintiffs, their oral representations that they do not intend to pay the Earnout Payment and their failure to notify Plaintiffs of any dispute in Plaintiffs' calculation of EBITDAR within ten

(10) business days from the delivery of the certificate, or by April 29, 2025, constitutes Defendants' agreement with Plaintiffs' calculation of EBITDAR.

40.    Despite this agreement, Defendants have failed to respond to Mr. Comisky's March 27, 2025, April 15, 2025 or April 21, 2025 requests for adequate assurances that Defendants would honor its basic payment obligations under the PSA.

41.    And, perhaps not surprisingly, Defendants have failed to make its required payment.

42.    In fact, Defendants have stated, without explanation or justification, that they will not pay the Earn Out Payment.

43.    Even worse, upon information and belief, Plaintiffs were trying to sell the properties prior to the three-year mark, which would trigger the Earn Out Payment.  Indeed, Plaintiffs made efforts to hastily sell the leased properties, with a closing date originally set on April 28, 2025, just one day before the Earn Out Payment was due, in an attempt to avoid paying the Earn Out Payment to Plaintiffs.

44.    Although Plaintiffs could not have known while negotiating the PSA, despite their thorough due diligence, Defendants **never** had any intention to make the Earn Out Payment.

45.     Defendants' breach of the PSA has caused, and continues to cause, Plaintiffs harm, including severely threatening the operation of the skilled nursing facilities, for which it is entitled to damages.

46.     Section 13.15 of the PSA provides that the agreement shall be construed and enforced in accordance with the laws of the state of Delaware.

47.     Section 2.3(b)(ii) of the PSA provides that "[t]he prevailing Party in any such… proceeding, in addition to any other relief to which such Party may be entitled, shall be entitled to recover from the non-prevailing Party…reasonable legal fees and other costs and expenses incurred by the prevailing party in connection with the proceeding."

## COUNT I – BREACH OF CONTRACT

48.     Plaintiffs incorporate each of the foregoing paragraphs herein as if set forth in full.

49.     Defendants and Plaintiffs entered into the PSA on or about November 22, 2021.

50.     The PSA is a valid contract, supported by consideration, and containing material terms regarding the parties' rights and obligations.

51.     Pursuant to the PSA, and in addition to the Purchase Price, Defendants promised to pay the Earn Out Payment if certain conditions were met.

52.     Closing under the PSA occurred on April 29, 2022.

53.    If the Earn Out Trigger Event occurred because no sale of the Plaintiffs'
Assets, recapitalization of Plaintiffs' Assets and/or refinance of Plaintiffs' Assets
occurred prior to the third anniversary of the Closing Date, then the Earn Out
Payment is Six Million Dollars ($6,000,000) if the annualized EBITDAR for the
nine (9) month period preceding the Earn Out Date equals or exceeds Eight Million
Five Hundred Thousand Dollars ($8,500,000). *See* Exhibit A § 2.3(b)(i).

54.    Section 2.3(b) of the PSA includes a breakdown of the Earn Out
Payment, which Defendants read, understood and signed.

55.    These conditions were met on April 15, 2025, as evidenced by
Plaintiffs' EBITDAR calculation. *See* Exhibit F.

56.    In full compliance with the PSA, Plaintiffs notified Defendants of the
Earn Out Trigger Event and delivered the Authorized Representative Certificate
explaining the same. *See* Exhibit E.

57.    Defendants have failed to request Work Papers, dispute Plaintiffs'
EBITDAR calculation (although Plaintiffs produced the same at the time it provided
notice on April 15, 2025) or pay the Earn Out Payment.

58.    Defendants' statement of their intention not to pay, and their failure to
pay, the Earn Out Payment constitutes a material breach of their obligations pursuant
to the PSA.

59.     Defendants' breach of the PSA has proximately caused, and continues to cause, Plaintiffs harm for which they are entitled to damages.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor against Defendants for: (1) a declaration that Defendants are obligated to pay the six million dollar ($6,000,000) Earn Out Payment to Plaintiffs pursuant to the PSA, (2) damages for breach of contract for Defendants' failure to honor such Earn Out Payment obligation, along with pre-judgment and post-judgment interest, (3) attorneys' fees and costs as provided for under section 2.3(b)(ii) of the PSA, and (4) such other further relief as the Court may deem just and equitable.

### COUNT II – BREACH OF CONTRACT (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

60.     Plaintiffs incorporate each of the foregoing paragraphs herein as if set forth in full.

61.     Defendants have breached the implied covenant of good faith and fair dealing in the PSA.

62.     Every contract governed by Delaware law has an implied covenant of good faith and fair dealing.

63.     This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

64.     The PSA is a valid and enforceable contract.

65.     Defendants' recent conduct, including, among other things, their repeated failure to acknowledge their obligations and duties under the PSA and make the required Earn Out Payment and accelerate the closing date is all part of an intentional effort to avoid their obligations under the PSA for Defendants' own ultimate benefit.

66.     Defendants did not act fairly or in good faith when they refused to acknowledge or make payment described in more detail above, and such actions were the direct and proximate cause of harm to Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor against Defendants for: (1) a declaration that Defendants are obligated to pay the six million dollar ($6,000,000) Earn Out Payment to Plaintiffs pursuant to the PSA, (2) damages for breach of contract for Defendants' failure to honor such Earn Out Payment obligation, along with pre-judgment and post-judgment interest, (3) attorneys' fees and costs, as provided for under section 2.3(b)(ii) of the PSA, and (4) such other further relief as the Court may deem just and equitable.

## COUNT III – UNJUST ENRICHMENT

67.     Plaintiffs incorporate each of the foregoing paragraphs herein as if set forth in full.

68.    While unlawfully refusing to make the required Earn Out Payment, Defendants have continued to reap the monetary benefits of the PSA through Plaintiffs' achieving of an annualized EBITDAR for the nine (9) month period preceding the Earn Out Date of over Eight Million Five Hundred Thousand Dollars ($8,500,000).

69.    Upon information and belief, Defendants have derived profits resulting from the PSA while avoiding their responsibilities and duties owed to Plaintiffs.

70.    By profiting from the PSA and refusing to undertake any responsibilities or duties owed to Plaintiffs, Defendants have retained a benefit, the retention of which would be inequitable.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor against Defendants for: (1) a declaration that Defendants are obligated to pay the six million dollar ($6,000,000) Earn Out Payment to Plaintiffs pursuant to the PSA, (2) damages for breach of contract for Defendants' failure to honor such Earn Out Payment obligation, along with pre-judgment and post-judgment interest, (3) attorneys' fees and costs, as provided for under section 2.3(b)(ii) of the PSA, and (4) such other further relief as the Court may deem just and equitable.

### COUNT IV – FRAUDULENT INDUCEMENT

71.    Plaintiffs incorporate each of the foregoing paragraphs herein as if set forth in full.

72.    Defendants represented to Plaintiffs—directly and through their express and agreed upon contractual obligations—that, upon the satisfaction of certain conditions, Plaintiffs are owed the Earn Out Payment in the amount of six million dollars ($6,000,000).

73.    Defendants knew at the time these representations were made that they were false.

74.    In fact, Defendants never intended to make this payment and honor their basic payment obligations under the PSA, as evidenced by their repeated decisions to ignore Plaintiffs—who have been attempting to manage expectations by giving Defendants ample notice that the Earn Out Payment conditions had been met—their oral representations that they do not intend to pay, and their scheme to sell the properties in an attempt to evade their obligations.

75.    Defendants intended to induce Plaintiffs' agreement to the PSA by making these statements, as the Earn Out Payment was a material portion of the Purchase Price and material to the PSA itself.

76.    Plaintiffs could not have discovered that Defendants' representations were false and that they never had any intention to pay. No amount of diligence that Plaintiffs could have reasonably done could have discovered Defendants' scheme to avoid making the Earn Out Payment to Plaintiffs.

77.    Plaintiffs were justified in relying on the representations of Defendants, who are well versed in sophisticated commercial real estate transactions such as this.

78.    Defendants misrepresented that they would pay Plaintiffs the Earn Out Payment, in addition to the Purchase Price.

79.    Defendants have ignored Plaintiffs' requests for adequate assurances that they would perform their contractual obligations and Plaintiffs have received no payment.

80.    Plaintiffs have been, and continue to be, damaged by virtue of these misrepresentations, as they have been deprived of the six million dollar ($6,000,000) Earn Out Payment despite their achieving, at each of the sixteen (16) facilities, the required and agreed upon EBITDAR.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor against Defendants for: (1) a declaration that Defendants are obligated to pay the six million dollar ($6,000,000) Earn Out Payment to Plaintiffs pursuant to the PSA, (2) damages for breach of contract for Defendants' failure to honor such Earn Out Payment obligation, along with pre-judgment and post-judgment interest, (3) punitive damages, (4) attorneys' fees and costs, as provided for under section 2.3(b)(ii) of the PSA, and (5) such other further relief as the Court may deem just and equitable.

## COUNT V – DECLARATORY JUDGMENT

81.     Plaintiffs incorporate each of the foregoing paragraphs herein as if set forth in full.

82.     Plaintiffs and Defendants entered into the PSA on or about November 22, 2021, which details the respective rights and obligations of the parties, including Defendants' obligation to pay the Earn Out Payment if certain conditions were met.

83.     There is a real case and controversy between Plaintiffs and Defendants as to whether Defendants are violating the PSA.

84.     The controversy involves substantial rights of the parties to this action.

85.     The issue is ripe for judicial determination as the Earn Out Payment became due on April 29, 2025.

86.     Plaintiffs seek declaratory relief, in the form of a judicial decree that Defendants have breached the PSA by failing to pay the Earn Out Payment.

87.     This declaratory judgment action, brought under Del. Code Ann. tit. 10, § 6501 is appropriate because there are adversarial claims between the parties indicating imminent and inevitable litigation, and there is a clear manifestation that the declaratory relief sought will be of practical help in ending the controversy.

88.     The declaratory judgment action is also appropriate because it will address questions concerning the performance and enforcement of the PSA and will

allow Plaintiffs to obtain a declaration of its rights, statuses, and legal relations under the Lease.

89.     A judgment of this Court will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

90.     A judgment of this Court will determine, terminate, and afford relief from the uncertainty and controversy giving rise to this action.

**WHEREFORE**, Plaintiffs respectfully request judgment in its favor against Defendants as follows:

a. Declaring that pursuant to the PSA, Defendants are obligated to pay the Earn Out Payment in the amount of $6,000,000.

b. Ordering Defendants to immediately pay the Earn Out Payment in the amount of $6,000,000; and

c. Awarding Plaintiffs the costs of suit and such other further relief as the Court deems just and proper.

**BLANK ROME LLP**

Dated:    April 30, 2025          */s/ Anna E. Currier*
                                  Anna E. Currier (#6271)
                                  Adam V. Orlacchio (#5520)
                                  1201 N. Market Street, Suite 800
                                  Wilmington, DE 19801
                                  (302) 425-6400
                                  Anna.Currier@blankrome.com
                                  Adam.Orlacchio@blankrome.com

Michael A. Iannucci (*pro hac vice application forthcoming*)
Maegan S. McUmber (*pro hac vice application forthcoming*)
PA Bar I.D. Nos. 206169, 335905
One Logan Square
Philadelphia, PA 19103
Tel: (215) 569-5543
Fax: (215) 832-5543
Michael.Iannucci@BlankRome.com
Maegan.McUmber@BlankRome.com

*Counsel for Plaintiffs Arrowhead Property, LLC, Chase County Property LLC, Downs Property, LLC, Edwardsville Property, LLC, SHR El Dorado Property, LLC, Eskridge Property, LLC, Kaw River Property, LLC, Lansing Property, LLC, Neodesha Property, LLC, Parkway Property, LLC, Pittsburg Property, LLC, Spring Hill Property, LLC, Wakefield Property, LLC, Wellington Property, LLC, Wichita Property, LLC and Wilson Property, LLC*